MORTGAGE SERVICING CO. of FLORIDA, et al v. CASSADY, et ux, et al.
No. 61-C-3594.

CASSADY, et ux v. CENTERBROOK CONSTRUCTION, Inc., et al.
No. 61-C-4436.
Circuit Court, Dade County.
January 19, 1962.

Wepman & Wepman, Miami, for Mortgage Servicing Company of Florida, and Coral-Glade Company.

A. Chester Abney, Miami, for Raymond F. Cassady and Kathleen J. Cassady.

Prebish & Duval, Miami, for Centerbrook Construction, Inc.

PHILLIP GOLDMAN, Circuit Judge.

*Final decree:* These two actions arise out of the same transactions and were, by agreement of the parties, consolidated for trial. The parties further stipulated and agreed that the court should resolve all issues made by the pleadings and actually tried by the parties; that is, the Cassadys, Mortgage Servicing Company of Florida, Coral-Glade Company and Jean Zide, doing business as Dade County Realty.[1]

The corporate parties seek in the alternative specific performance (and collateral relief incident thereto) of a certain deposit receipt contract entered into by and between their predecessor in interest and the Cassadys; or that the Cassadys respond in damages for the reasonable value of the use and benefit of the premises.

The Cassadys by their action seek the cancellation of the deposit receipt agreement in question (together with the return of their deposit held in escrow by the defendant broker Jean Zide) as well as damages for certain economic injuries that they allegedly received at the hands of the active corporate parties.

---

1. In view of the stipulation (case no. 61-C-4436) the claim of the Cassadys against the defunct defendant Centerbrook Construction, Inc. appears to have been abandoned. In any event references throughout this decree to the "corporate parties" is solely to Mortgage Servicing Company of Florida and the Coral-Glade Company.

The court has heard all of the testimony (which was extensive), observed the witnesses, examined the documentary exhibits and briefs submitted by the parties, and, on the basis of the foregoing, finds and concludes as hereinafter set forth.

At the threshold it should be noted that this dispute, in the first instance, was *not* the making of the parties to this litigation. It should be clearly understood that the Cassadys contracted with Centerbrook Construction, Inc. for the construction and purchase of a home more specifically described in the agreement. Although it was not then known, Centerbrook was undoubtedly in difficult economic straits at that time, for shortly thereafter its "economic roof" caved in leaving many of our citizens (most of whom had proceeded without benefit of counsel) in the unenviable position of having an unknown and unexpected "additional" mortgage on their premises. Fortunately for the Cassadys (with whom we are here concerned) the construction of their home gave rise to numerous complaints which prevented them from "closing" before Centerbrook's condition became known to the community.

At this juncture the active corporate parties here (Mortgage Servicing Company of Florida and Coral-Glade Company, Florida corporations), through their principal party in interest, Mr. Emil Gould, entered the picture. The court is confident that a bona-fide effort was made by all concerned to bring order out of chaos but without too much success. Their conflicting interests apparently precluded effective communications between them. It is important to recognize though that the "unhappiness" or "difficulties" which beset each side in this litigation was not, in the court's judgment, the making of the other side. It may safely be said that Centerbrook Construction was at the bottom of it all. Although knowledge and an awareness of this fact may not comfort the wounds or ease the wrongs, real and imagined, to which the parties have been subjected, it may aid them in understanding the court's decision which is premised thereon.

Assuming[2] that the corporate parties are in a position to convey title and possession of the property in question, it would be, and the court so finds, unconscionable, under the facts and circumstances here, to specifically enforce the contract in question against the Cassadys. Robinson v. University of Miami, Fla.App., 100 So.2d 442; Levine v. Enchanted Lake Homes, Inc., Fla.App., 115 So.2d 89; 29 Fla.Jur., Specific Performance, §8, et seq. By the same token, under the evidence here, the Cassadys are entitled to have the contract in question cancelled. And the court so finds.

---

2. And this is a violent assumption on this record since it appears that they have either: already disposed of it; or, a non-party is in the process of foreclosing a first mortgage on the property.

As previously noted, it is to be emphasized that these findings are not premised upon any wrongdoing on the part of the "corporate Gould interests" for they too have been wronged; which leads us to the second phase of this litigation.

It is an elementary principle of equity jurisprudence that he who seeks equity must do equity. That principle applies here. The Cassadys had the use and occupancy of the premises in question for at least a full ten months. The evidence here is that a fair rental of the premises would be in excess of $150. Making allowances for some of the wrongs visited upon the Cassadys by Centerbrook Construction, the court finds that a fair net rental for the use of the premises would be $100 a month or a total of $1,000 and the Cassadys, upon tendering such amount to the corporate parties shall be entitled to a return of the $3,000 deposit escrowed with the broker Jean Zide.[3]

The premises considered it is accordingly ordered and decreed as follows —

1. The prayer of the plaintiffs in cause number 61-C-3594 for specific performance be and the same is hereby denied; and

2. The deposit receipt agreement, introduced in evidence as plaintiffs' exhibit #2, be and the same is hereby cancelled and declared to be of no legal effect whatsoever; and

3. The Cassadys, Raymond F. and Kathleen J., are indebted to Mortgage Servicing Company of Florida and Coral-Glade Company in the sum of $1,000 which sum represents the net value of the use and occupancy of the premises in question for ten months.

4. The defendant broker Jean Zide is hereby directed to either — a) return the $3,000 deposit (which she holds pursuant to said deposit receipt) to the Cassadys upon being notified that the Cassadys have tendered $1,000 to Mortgage Servicing Company of Florida and Coral-Glade Company; or, b) if the parties in writing so agree, return $2,000 to the Cassadys and deliver $1,000 to Mortgage Servicing Company of Florida and Coral-Glade Company.

5. The court retains jurisdiction for the purpose of implementing and enforcing this decree.

---

3. The court has no objection to the parties instructing the escrow agent to return $2,000 to the Cassadys and $1,000 to Mortgage Servicing Company of Florida and Coral-Glade Company.